1  Jonathan G. Fetterly (State Bar No. 228612)
   E-mail: jon.fetterly@hro.com
2  HOLME ROBERTS & OWEN LLP
3  777 South Figueroa Street, Suite 2800
   Los Angeles, CA 90017-5826
4  Telephone: (213) 572-4300
   Facsimile: (213) 572-4400
5

6  Attorneys for Plaintiffs
   ATLANTIC RECORDING CORPORATION;
7  SONY BMG MUSIC ENTERTAINMENT;
   WARNER BROS. RECORDS INC.; ARISTA
8  RECORDS LLC; BMG MUSIC; MAVERICK
   RECORDING COMPANY; UMG
9  RECORDINGS, INC.; and CAPITOL
   RECORDS, INC.
10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14 ATLANTIC RECORDING CORPORATION, a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; WARNER BROS. RECORDS INC., a Delaware corporation; ARISTA RECORDS LLC, a Delaware limited liability company; BMG MUSIC, a New York general partnership; MAVERICK RECORDING COMPANY, a California joint venture; UMG RECORDINGS, INC., a Delaware corporation; and CAPITOL RECORDS, INC., a Delaware corporation, | Case No.: 07CV1824 W JMA |
| | Honorable Thomas J. Whelan |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| Plaintiffs, | **Date: December 10, 2007** |
| vs. | **Time: N/A** |
| | **Location: Courtroom 7** |
| CHARLES SERRANO, | |
| Defendant. | **[NO ORAL ARGUMENT PER LOCAL RULE]** |

1

#7378 v3

# TABLE OF CONTENTS

Page

I. INTRODUCTION................................................................................................ 1

II. STANDARD OF REVIEW. ................................................................................. 3

III. DEFENDANT'S DECLARATORY JUDGMENT COUNTERCLAIM (COUNT 1) SHOULD BE DISMISSED BECAUSE IT IS REDUNDANT. ........................................... 3

IV. DEFENDANT'S CLAIM FOR TRESPASS (COUNT 2) SHOULD BE DISMISSED BECAUSE HE HAS NOT ADEQUATELY PLED THE ESSENTIAL ELEMENTS OF THE CLAIM. ......................................................................................................... 5

V. DEFENDANT'S CLAIM THAT PLAINTIFFS VIOLATED THE COMPUTER FRAUD AND ABUSE ACT (COUNT 3) SHOULD BE DISMISSED BECAUSE DEFENDANT HAS NOT PROPERLY PLED THE ELEMENTS OF A CIVIL CLAIM UNDER THAT ACT................................................................................................ 7

VI. DEFENDANT'S INVASION OF PRIVACY CLAIM (COUNT 4) SHOULD BE DISMISSED BECAUSE DEFENDANT HAS NOT ADEQUATELY PLED THE ESSENTIAL ELEMENTS OF SUCH A CLAIM, AND BECAUSE THE ACTIONS OF WHICH DEFENDANT COMPLAINS ARE PRIVILEGED......................................... 10

    A. The Conduct of Which Defendant Complains Is Protected Under Both the *Noerr-Pennington Doctrine* and California's Litigation Privilege........................ 11

    B. Defendant Has Not Stated A Claim For Invasion Of Privacy Through Intrusion Into Private Affairs. .................................................................................... 13

    C. Defendant Has Not Adequately Pled A False Light Claim. .................................... 15

    D. Defendant Has Not Stated A Claim For Invasion Of Privacy Through Public Disclosure Of Private Facts......................................................................... 15

VII. DEFENDANT'S CLAIM FOR IIED (COUNT 5) SHOULD BE DISMISSED BECAUSE (1) DEFENDANT HAS FAILED TO STATE THE NECESSARY ELEMENTS OF HIS CLAIM, AND (2) THE CLAIM IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE AND CALIFORNIA'S LITIGATION PRIVILEGE. ..... 16

VIII. CONCLUSION .................................................................................................. 18

1

2                           **TABLE OF AUTHORITIES**

3

4                                                                                    <u>Page</u>

5   **Cases**

6   *Aisenson v. Am. Broad. Co.,*

7       220 Cal. App. 3d 146, 160 (1990) ............................................................................... 15

8   *Aisenson v. American Broadcasting Co.*

9       220 Cal. App. 3d 146, 162 (1990) ............................................................................... 11

10  *Alcorn v. Anbro Eng'g, Inc.,*

11      2 Cal. 3d 493, 498 n.2 (1970) ..................................................................................... 17

12  *Aldens, Inc. v. Packel,*

13      524 F.2d 38, 53 (3d Cir. 1975)...................................................................................... 4

14  *Argwal v. Johnson,*

15      25 Cal. 3d 932, 946 (1979) .......................................................................................... 17

16  *Arista Records, L.L.C. v. Tschirhart,*

17      2006 U.S. Dist. LEXIS 70332, *7 (W.D. Tex. Aug. 23, 2006) ............................... 6, 8, 9, 11, 14, 16

18  *Atlantic Recording Corp. v. Demassi,*

19      Case No. 07-cv-0006 (S.D. Tex. May 21, 2007) ........................................................ 4

20  *Atlantic Recording Corp. v. Heslep,*

21      Civil Action No. 06-cv-0132-Y, slip op. at 11-12

22      (N.D. Texas May 16, 2007) ................................................................................ 3, 13, 17

23  *Avery Dennison Corp. v. Acco Brands, Inc.*

24      2000 U.S. Dist. LEXIS 3938, *12-14 (C.D. Cal. 2000) .............................................. 4

25  *Bell Atl. Corp. v. Twombly,*

26      127 S. Ct. 1955, 1965 (2007).......................................................................................... 3

27  *Bundren v. Superior Court*

28      145 Cal. App. 3d 784, 791 n.8 (1983) ........................................................................ 17

#7378 v3

1  *California Motor Transp. Co. v. Trucking Unltd.*,
2     404 U.S. 508 (1972)................................................................................................ 11
3  *California Physicians' Service v. Superior Court*,
4     9 Cal. App. 4th 1321 (1992) ............................................................ 3, 12, 13, 15, 16, 18
5  *Cervantez v. J. C. Penney Co.*,
6     24 Cal. 3d 579, 593 (1979) .......................................................................................... 17
7  *Chemicor Drugs, Ltd. v. Ethyl Corp.*,
8     168 F.3d 119, 128-129 (3d. Cir. 1999) ........................................................................ 12
9  *Christensen v. Superior Court*,
10    54 Cal. 3d 868, 903 (1991) .......................................................................................... 17
11 *Coastal States Marketing, Inc. v. Hunt*,
12    694 F.2d 1358, 1367 (5th Cir. 1983) ........................................................................... 12
13 *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*,
14    944 F.2d 1525, 1528 (9th Cir. 1991) .............................................................. 3, 12, 16, 18
15 *Columbia Pictures, Inc. v. Bunnell*,
16    2007 U.S. Dist. LEXIS 63620, *7 (C.D. Cal. 2007).............................. 7, 9, 13, 14, 18
17 *Davidson v. City of Westminster*,
18    32 Cal. 3d 197, 210 (1982) .......................................................................................... 17
19 *Elektra Entm't Group, Inc v. Does 1-9*,
20    2004 U.S. Dist. LEXIS 23560, at *13 (S.D.N.Y. Sep. 8, 2004)................................ 7, 8
21 *Fairfield v. American Photocopy Equipment Co.*,
22    138 Cal. App. 2d 82, 86 (1955) ................................................................................... 10
23 *GNB Inc. v. Gould, Inc.*,
24    1990 U.S. Dist. LEXIS 16172, *12 (N.D. Ill. 1990) ..................................................... 4
25 *Havoco Am., Ltd. v. Hollobow*,
26    702 F.2d 643, 649 (7th Cir. 1983) ............................................................................... 12
27 *Hill v. Nat'l Collegiate Ath. Ass'n*,
28    7 Cal. 4th 1, 26 (1994) ........................................................................................... 10, 15

#7378 v3

*In re America Online, Inc. Version 5.0 Software Litigation,*

   168 F. Supp. 2d 1359, 1368 (S.D. Fla. 2001) ............................................................ 8, 10

*In re Verizon Internet Servs., Inc.,*

   257 F. Supp. 2d at 267 ........................................................................ 8, 10, 14, 16

*Intel Corp. v. Hamidi,*

   30 Cal. 4th 1342, 1350 (2003) .............................................................................. 5, 6, 7

*International Ass'n of Machinists & Aerospace Workers v. Werner,*

   390 F. Supp. 2d 479 (D. Md. 2005) ..................................................................... 8

*Interscope Records v. Duty,*

   Case No. 05-cv-03744 PHX (D. Ariz., Apr. 14, 2006)........................................... 5, 11, 12

*Interscope Records v. Kimmel,* Case

   No. 07-cv-0108 (N.D.N.Y. June 18, 2007)........................................................... 4

*Kebodeaux v. Schwegmann Giant Super Markets, Inc.,*

   33 U.S.P.Q.2d 1223, 1224 (E.D. La. 1994) ....................................................... 2

*M.G. v. Time Warner,*

   89 Cal. App. 4th 623, 631 (2001) ....................................................................... 16

*Manistee Town Ctr. v. City of Glendale,*

   227 F.3d 1090, 1092-1093 (9th Cir. 2000) .......................................................... 11

*Maverick Recording Co. v. Harper,*

   Case No. 07-cv-00026 XR (W.D. Tex. Sept. 27, 2007) ...................................... 4

*McGlinchy v. Shell Chem. Co.,*

   845 F.2d 802, 810 (9th Cir. 1988) ....................................................................... 3

*Melorich Builders v. Superior Court,*

   160 Cal. App. 3d 931, 936 (1984) ....................................................................... 17

*Melvin v. Reid,*

   112 Cal. App. 285, 290 (1931) ............................................................................ 11

*Mestre v. Vivendi Universal US Holding Co.,*

   2005 US Dist. LEXIS 41023, *8 (D. Or. 2005)................................................... 2

1    *Miles v. America Online, Inc.,*
2        202 F.R.D. 297 (M.D. Fla. 2001)......................................................................... 10
3    *Northwest Airlines, Inc. v. Camacho,*
4        296 F.3d 787, 791 (9th Cir. 2002) ...................................................................... 3
5    *Pareto v. F.D.I.C.,*
6        139 F.3d 696, 699 (9th Cir. 1998) .............................................................. 3, 9, 10
7    *Pettrey v. Enter. Title Agency, Inc.,*
8        2006 U.S. Dist. LEXIS 83957, *9 (6th Cir. 2006)............................................... 4
9    *Shulman v. Group W Prods.,*
10       18 Cal. 4th 200, 232 (1998) ........................................................................... 10, 14
11   *Smith v. Maldonado,*
12       72 Cal. App. 4th 631, 645 (1999) ...................................................................... 15
13   *Sony BMG Music Ent v. Does 1-16,*
14       Case No. 07-cv-00581 BJM (S.D. Cal. 2007) .............................................. 1, 13
15   *Sony BMG Music Entmt. v. Crain,*
16       Case No. 06-cv-00567 TH (E.D. Tex. Sept. 26, 2007).......................................... 4
17   *Sosa v. DIRECTV, Inc.,*
18       437 F.3d 923, 942 (9th Cir. 2006) .................................................................... 12
19   *Theofel v. Farey-Jones,*
20       359 F.3d 1066, 1078 (9th Cir. 2004) .................................................................. 8
21   *Trerice v. Blue Cross of Cal.,*
22       209 Cal. App. 3d 878, 883 (1989) .................................................................... 17
23   *United Mine Workers v. Illinois State Bar Ass'n,*
24       389 U.S. 217, 222 (1967)................................................................................... 11
25   *United States v. Kennedy,*
26       81 F. Supp. 2d 1103, 1106 n.4 (D. Kan. 2000)............................................... 7, 8
27   *Veltman v. Norton Simon, Inc.,*
28       425 F. Supp. 774, 776 (S.D.N.Y. 1977)............................................................... 4

#7378 v3

*Video Int'l Prod., Inc. v. Warner-Amex Cable Comm.*,
    858 F.2d 1075, 1082-83 (5th Cir. 1988) ................................................................................ 12

**Statutes**

17 U.S.C. §101 ............................................................................................................................. 1, 2

18 U.S.C. § 1030 (a)(5)(A) ............................................................................................................. 8

18 U.S.C. § 1030(e)(8)(A) ............................................................................................................ 10

18 U.S.C. §§ 1030 (a)(5)(B) and (C) ............................................................................................. 8

18 U.S.C. §1030(g) ......................................................................................................................... 8

18 U.S.C. §1030; (4) ....................................................................................................................... 2

CFAA §1030(a)(5)(B) or (C) .......................................................................................................... 9

**Rules**

Cal. Civ. Code §47(b) ................................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1, 3

**Regulations**

*Cal. Civ. Jury Inst.* ("*CACI*"), No. 1802. ................................................................................... 15

1    Plaintiffs respectfully submit this Motion to Dismiss Defendant's Counterclaims under Fed.

2    R. Civ. P. 12(b)(6). As ground therefore, Plaintiffs state as follows:

3    **I.     INTRODUCTION**

4    Plaintiffs bring this action seeking redress for the infringement of their copyrighted sound

5    recordings pursuant to the Copyright Act, 17 U.S.C. §101, *et seq*. Since the early 1990s, Plaintiffs

6    and other copyright holders have faced a massive and exponentially expanding problem of digital

7    piracy over the Internet. Today, copyright infringers use various peer-to-peer ("P2P") networks to

8    reproduce or copy (download) or distribute (upload) to others billions of perfect digital copies of

9    Plaintiffs' copyrighted sound recordings. As a result of the rise of P2P networks, Plaintiffs have

10   sustained and continue to sustain devastating financial losses.

11   On February 8, 2007, Plaintiffs' investigators detected an individual using the LimeWire file

12   sharing service on the Gnutella P2P network to engage in copyright infringement. (Complaint, ¶

13   18). Plaintiffs' investigators detected the infringement by logging onto the P2P network in the same

14   fashion as any Internet user and viewing the files that this individual was distributing to other users.

15   This individual had as many as 224 digital audio files on his computer and was distributing them for

16   free both to Plaintiffs' investigators and to millions of others using similar P2P networks.

17   (Complaint, ¶ 18). Plaintiffs' investigators further ascertained that this individual used Internet

18   Protocol "IP" address 69.237.185.46 to connect to the Internet.

19   After filing a "Doe" lawsuit against the individual using that IP address, Plaintiffs

20   subpoenaed this individual's internet service provider to determine his or her identity.[1] The internet

21   service provider, SBC Internet Services, Inc. ("SBC"), identified Defendant Charles Serrano as the

22   individual in question. Plaintiffs subsequently filed their Complaint against Defendant for copyright

23   infringement.

24

25   [1] Plaintiffs filed the "Doe" suit in this district. *Sony BMG Music Ent v. Does 1-16*, Case No.

26   07-cv-00581 BJM (S.D. Cal. 2007). Prior to issuing the subpoena, Plaintiffs filed an *ex parte*
     application for leave to take immediate discovery. Pursuant to Judge Moskowitz' order granting

27   Plaintiffs' application for leave to take immediate discovery, Plaintiffs served a Rule 45 subpoena on
     the internet service provider that issued the IP address in order to learn the identity of the individual

28   to whom it had been issued.

1    On September 19, 2007, Defendant filed his Counterclaim and Demand for Jury Trial

2  ("Counterclaims"). In his Counterclaims, Defendant accuses Plaintiffs of a laundry list of

3  misbehaviors and asserts five separate counts, including: (1) Declaratory Judgment of Non-

4  Infringement; (2) Trespass; (3) Violation of Computer Fraud and Abuse Act 18 U.S.C. §1030; (4)

5  Invasion of Privacy; and (5) Intentional Infliction of Emotional Distress ("IIED").

6    Defendant's declaratory judgment counterclaim is a mirror image of Plaintiffs' copyright

7  infringement claim. This counterclaim is, therefore, duplicative and should be dismissed or stricken

8  under Rule 12 as redundant and unnecessary. Each of Defendant's remaining counterclaims is

9  subject to dismissal under Rule 12(b)(6) because each one of them fails to allege one or more

10  elements necessary to state a claim upon which relief can be granted.

11    Moreover, not only does Defendant fail to allege facts to support the essential elements of

12  each of his counterclaims, but the underlying basis of all of Defendant's claims (although not clearly

13  stated) is that Plaintiffs should somehow be held liable for their legitimate efforts to enforce their

14  copyrights. That, of course, is not only improper, but is contrary to the public policy desire to have

15  copyright owners enforcing their rights. *See Kebodeaux v. Schwegmann Giant Super Markets, Inc.*,

16  33 U.S.P.Q.2d 1223, 1224 (E.D. La. 1994) (holding that it would be inconsistent with the purposes

17  of the Copyright Act to "deter plaintiffs . . . from bringing suits when they have a reason to believe,

18  in good faith, that their copyrights have been infringed"); *Mestre v. Vivendi Universal US Holding

19  Co.*, 2005 US Dist. LEXIS 41023, *8 (D. Or. 2005) (observing same). Indeed, Defendant accuses

20  Plaintiffs of filing a frivolous suit, and alleges that their conduct in filing suit is despicable,

21  extortionate and oppressive. (Counterclaim, ¶¶ 39, 40). In a recent case in Texas involving a similar

22  effort by record company plaintiffs to enforce their rights against another P2P infringer, the Court

23  considered a similar attack on Plaintiffs' motives and concluded:

24    The Court rejects [defendant]'s characterization of this lawsuit, and many others like
      it, as "predatory." Plaintiffs' attorneys brought this lawsuit not for purposes of
25    harassment or to extort [defendant] as he contends, but rather, to protect their clients'
      copyrights from infringement and to help their clients deter future infringement . . . .
26    For now, our government has chosen to leave the enforcement of copyrights, for the
      most part, in the hands of the copyright holder. *See* 17 U.S.C. §101, *et seq.* Plaintiffs
27    face a formidable task in trying to police the internet in an effort to reduce or put a
      stop to the online piracy of their copyrights. Taking aggressive action, as Plaintiffs
28    have, to defend their copyrights is certainly not sanctionable conduct under Rule 11.

2

The right to come to court to protect one's property rights has been recognized in this country since its birth.

*Atlantic Recording Corp. v. Heslep*, Civil Action No. 06-cv-0132-Y, slip op. at 11-12 (N.D. Texas May 16, 2007) (Exhibit A).

As set forth below, each of Defendant's counterclaims is subject to dismissal. All of the claims should be dismissed because they fail to state a claim upon which relief can be granted. Further, the conduct upon which counts 4 and 5 are based is protected by the California litigation privilege and/or the *Noerr-Pennington* doctrine, which afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. *See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991); *California Physicians' Service v. Superior Court*, 9 Cal. App. 4th 1321 (1992).

In short, the legitimate conduct of which Defendant complains is not actionable, and his counterclaims should be dismissed in their entirety.

## II. STANDARD OF REVIEW.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all material allegations, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The allegations found in the Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In addition, courts routinely dismiss complaints for failure to state a claim upon which relief can be granted where, as here, an affirmative defense (e.g., litigation privilege) appears on the face of the pleading. *See, e.g., Northwest Airlines, Inc. v. Camacho*, 296 F.3d 787, 791 (9th Cir. 2002).

## III. DEFENDANT'S DECLARATORY JUDGMENT COUNTERCLAIM (COUNT 1) SHOULD BE DISMISSED BECAUSE IT IS REDUNDANT.

Defendant's first counterclaim seeks a declaratory judgment that Defendant did not infringe Plaintiffs' copyrights. (Counterclaim, Count 1 at p.6). This counterclaim is redundant of Plaintiffs' claim for copyright infringement. A decision on the merits of Plaintiffs' copyright claim will render

#7378 v3

1  Defendant's request for declaratory judgment moot. This Court should, therefore, dismiss
2  Defendant's claim for declaratory relief because it is duplicative and unnecessary.

3  Courts routinely dismiss "mirror image" counterclaims where they merely restate issues
4  already before the court as part of plaintiff's affirmative case. *See, e.g., Avery Dennison Corp. v.*
5  *Acco Brands, Inc.* 2000 U.S. Dist. LEXIS 3938, *12-14 (C.D. Cal. 2000) (dismissing counterclaim
6  for declaratory judgment of non-infringement and no dilution because it was redundant to plaintiff's
7  complaint for trademark infringement and dilution); *Pettrey v. Enter. Title Agency, Inc.*, 2006 U.S.
8  Dist. LEXIS 83957, *9 (6th Cir. 2006) ("courts should dismiss or strike a redundant counterclaim
9  when it is clear that there is a complete identity of factual and legal issues between the complaint and
10 the counterclaim") (internal quotations omitted); *Aldens, Inc. v. Packel*, 524 F.2d 38, 53 (3d Cir.
11 1975) (dismissing Attorney General's counterclaim for declaratory relief where counterclaim
12 presented the "identical issues posited by the complaint"); *GNB Inc. v. Gould, Inc.*, 1990 U.S. Dist.
13 LEXIS 16172, *12 (N.D. Ill. 1990) (dismissing counterclaim as "duplicative" where it was
14 "essentially a restatement" of plaintiff's claim from defendant's perspective); *Veltman v. Norton*
15 *Simon, Inc.*, 425 F. Supp. 774, 776 (S.D.N.Y. 1977) (dismissing counterclaim for declaratory relief
16 as "redundant" and "moot").

17 Courts across the country have dismissed virtually identical declaratory judgment
18 counterclaims filed against many of the same record company plaintiffs in similar copyright
19 infringement cases. *See Sony BMG Music Entmt. v. Crain*, Case No. 06-cv-00567 TH (E.D. Tex.
20 Sept. 26, 2007) ("Defendant's counterclaim seeking a declaration of non-infringement raises no legal
21 or factual issues outside of those raised by plaintiffs' complaint, and is simply plaintiffs' copyright
22 claim recast from the perspective of defendant") (Ex. B ); *Maverick Recording Co. v. Harper*, Case
23 No. 07-cv-00026 XR (W.D. Tex. Sept. 27, 2007) (Dismissing defendant's declaratory judgment
24 counterclaim because it was the "mirror image" of Plaintiffs' copyright claim) (Ex. C); *Interscope*
25 *Records v. Kimmel*, Case No. 07-cv-0108 (N.D.N.Y. June 18, 2007) ("By asserting non-infringement
26 as a counterclaim, Defendant is simply attempting to recast himself as the Plaintiff") (Ex. D);
27 *Atlantic Recording Corp. v. Demassi*, Case No. 07-cv-0006 (S.D. Tex. May 21, 2007) (Dismissing
28 declaratory judgment counterclaim as "redundant and unnecessary") (Ex. E); *Interscope Records v.*

4

1 | *Duty*, Case No. 05-cv-03744 PHX (D. Ariz., Apr. 14, 2006) (Dismissing declaratory judgment

2 | counterclaim) (Ex. F);

3 |      Here, Defendant seeks a declaration that he has not infringed Plaintiffs' copyrights. That

4 | precise issue of infringement is set forth in Plaintiffs' Complaint. Defendant's declaratory judgment

5 | counterclaim raises no legal or factual issues outside those raised by Plaintiffs' Complaint, and is

6 | simply Plaintiffs' copyright claim recast from the perspective of Defendant.

7 |      For these reasons, Defendant's counterclaim for declaratory relief is entirely redundant of

8 | Plaintiffs' claim. Accordingly, it should be dismissed.

9 | **IV.    DEFENDANT'S CLAIM FOR TRESPASS (COUNT 2) SHOULD BE DISMISSED**

10 | **BECAUSE HE HAS NOT ADEQUATELY PLED THE ESSENTIAL ELEMENTS OF THE CLAIM.**

11 |      The tort of trespass to chattels allows recovery for interferences with possession of personal

12 | property not sufficiently important to be classified as conversion. *Intel Corp. v. Hamidi*, 30 Cal. 4th

13 | 1342, 1350 (2003). Under California law, a trespass to chattels lies where an intentional interference

14 | with the possession of personal property has proximately caused injury. *Id.* at 1351-1352. "In cases

15 | of interference with possession of personal property not amounting to conversion, the owner has a

16 | cause of action for trespass, *and may recover only the actual damages suffered by reason of the*

17 | *impairment of the property or the loss of its use.*" *Id.* (emphasis in original). California law follows

18 | the general rule that a trespass to chattels is not actionable if it does not involve actual or threatened

19 | injury to the personal property or to the possessor's legally protected interest in the personal

20 | property. *Id.* at 1364.

21 |      In *Intel Corp.*, the California Supreme Court considered the issue of whether unwelcome

22 | e-mails, sent by one of Intel's former employees to Intel's current employees, constituted a trespass

23 | to chattels. *Id.* The plaintiff, Intel, maintained an e-mail system, connected to the Internet, through

24 | which messages between the employees and those outside the company could be sent and received.

25 | Intel sued its former employee claiming that by communicating with its employees over its e-mail

26 | system he committed the tort of trespass to chattels.

27 |      The California Supreme Court rejected this claim and held that there was no trespass to

28 | chattel because Intel did not demonstrate any injury to its personal property, or to its legal interest in

1    that property. *Id.* at 1359-1360. In reaching this holding, the Court recognized that the decisions

2    finding electronic contact to be a trespass to computer systems have generally involved some actual

3    or threatened interference with the computers' functioning. *Id.* at 1353 (citing numerous federal

4    district court decisions).

5         The Court further observed that Intel connected its e-mail system to the Internet and

6    permitted its employees to make use of this connection both for business and personal purposes, and

7    in doing so, Intel necessarily contemplated the employees' receipt of unsolicited, as well as solicited,

8    communications from outside the company. *Id.* at 1359. The Court recognized that it was inevitable

9    that some communications would be unwelcome, but that Defendant did nothing but use the e-mail

10   system for its intended purpose – to communicate with employees – and that without any physical or

11   functional harm or disruption, the occasional unwelcome transmission could not reasonably be

12   viewed as impairing the quality or value of Intel's computer system. *Id.*

13        Here, Defendant has made no allegation that Plaintiffs' actions have caused some actual or

14   threatened interference with his possession or legally protected interest in his computer. He does not

15   – and cannot – claim that the actions of which he complains have deprived him of the right to

16   possess his computer files or his use thereof, and there is no suggestion that Defendant's computer

17   files have been impaired, altered, or otherwise damaged. Nor does Defendant claim that Plaintiffs

18   (or their investigator) deprived him of the right to possess or use his computer files when it detected

19   the infringement at issue by using the same LimeWire software functionalities used by other

20   individuals who engage in file swapping. Indeed, Defendant does not – and cannot – allege that

21   Plaintiffs disturbed his possession of any personal property at all.

22        Instead, Defendant simply alleges that he has suffered damages, including "embarrassment,

23   anxiety, mental distress, emotional pain and suffering, inconvenience, and financial distress."

24   (Counterclaim, at ¶ 47). These allegations are insufficient to suggest that Defendant's possession of

25   his computer files was ever disturbed, damaged or threatened, and insufficient to state a claim for

26   trespass. *See Intel Corp,* 30 Cal. 4th at 1364; *see also Arista Records, L.L.C. v. Tschirhart,* 2006

27   U.S. Dist. LEXIS 70332, *7 (W.D. Tex. Aug. 23, 2006) (holding that defendant could not maintain

28

H7378 v3

1   cause of action for electronic trespass where there was no allegation that plaintiffs damaged the

2   computer or denied defendant access to it) (Ex.G).

3          Additionally, Defendant alleges that Plaintiffs' investigators conducted an electronic or

4   physical search of Defendant's computer without Defendant's knowledge, permission and consent.

5   (Counterclaim, at ¶ 44). However, by using the LimeWire P2P file sharing software to swap files

6   over the Internet, a user gives other LimeWire users on the Internet the ability to view and download

7   any files in the "shared folder" that the user distributes over the P2P networks. *See Columbia

8   Pictures*, 2007 U.S. Dist. LEXIS 63620, *7 (observing that users of P2P file sharing systems have

9   little to no expectation of privacy because they broadcast their identifying information to everyone in

10  the "swarm" as they download the file); *United States v. Kennedy*, 81 F. Supp. 2d 1103, 1106 n.4

11  (D. Kan. 2000) (explaining that one is able to view another's computer files when the file share

12  mechanism is turned on, thereby allowing other users to view those files); *Elektra Entm't Group,*

13  *Inc v. Does 1-9*, 2004 U.S. Dist. LEXIS 23560, at *13 (S.D.N.Y. Sep. 8, 2004) (holding Defendant

14  has "minimal 'expectation of privacy in downloading and distributing copyrighted songs without

15  permission'").

16         Thus, there can be no claim of trespass because the only reason Plaintiffs were able to detect

17  Defendant's infringement was because his "shared" folder was open for others to view.

18  Notwithstanding this fact, even if Defendant could establish that Plaintiffs viewed his shared folder

19  without his permission or consent, his claim still fails because he has not alleged any actual or

20  threatened damage to his legal interests in his computer or his computer files. Without any physical

21  or functional harm or disruption, the occasional "unwelcome" electronic transmission can not

22  reasonably be viewed as impairing Defendant's interest in his computer. *See Intel Corp*, 30 Cal. 4th

23  at 1359.

24         For all of these reasons, Defendant's second counterclaim for trespass should be dismissed.

25  **V.    DEFENDANT'S CLAIM THAT PLAINTIFFS VIOLATED THE COMPUTER
            FRAUD AND ABUSE ACT (COUNT 3) SHOULD BE DISMISSED BECAUSE**
26  **      DEFENDANT HAS NOT PROPERLY PLED THE ELEMENTS OF A CIVIL CLAIM
            UNDER THAT ACT.**
27
           Defendant's third claim alleges violations of the Computer Fraud and Abuse Act ("CFAA").
28
    The CFAA "is primarily a criminal statute, but it also creates a private cause of action in Section

#7378 v3

1  │  1030(g)." *In re America Online, Inc. Version 5.0 Software Litigation*, 168 F. Supp. 2d 1359, 1368

2  │  (S.D. Fla. 2001). Section 1030(g) authorizes a civil cause of action only in limited circumstances.

3  │  18 U.S.C. §1030(g).

4  │      The CFAA prohibits a number of very specific computer activities, from hacking into

5  │  government computers with classified information to accessing credit report information or the

6  │  computers of financial institutions. Defendant does not specify which provision he contends

7  │  Plaintiffs have violated. Nonetheless, all of the activities prohibited by the CFAA require the access

8  │  of, or intentional damage to, another's computer *without authorization. See, e.g., In re America*

9  │  *Online*, 168 F. Supp. 2d at 1369-72 (differentiating between 18 U.S.C. §§ 1030 (a)(5)(B) and (C)

10 │  which prohibit access of a computer by an outsider from 18 U.S.C. § 1030 (a)(5)(A) which prohibits

11 │  intentional damage to a computer by an outsider or insider); *Theofel v. Farey-Jones*, 359 F.3d 1066,

12 │  1078 (9th Cir. 2004). Here, as a matter of law, Defendant cannot show that Plaintiffs and/or their

13 │  investigators acted without authorization.

14 │      As previously discussed, Plaintiffs' investigators detected Defendant's shared folder because

15 │  the LimeWire P2P software utilized by Defendant to swap files over the Internet has a file-sharing

16 │  feature that was enabled at the time the infringement was detected. This feature gives anyone else

17 │  on the Internet the ability to view and download any files in the "shared folder" that the user

18 │  distributes over the P2P networks. *See Kennedy*, 81 F. Supp. 2d at 1106 n.4 (explaining detection

19 │  through file-sharing program). Defendant's action in enabling the file sharing feature authorized the

20 │  whole world to view and download his digital audio files – making them as publicly accessible as

21 │  any web site on the Internet. By making the "shared folder" available to the public, Defendant

22 │  granted exactly the type of authorization contemplated by the CFAA. *See, e.g., Tschirhart*, U.S.

23 │  Dist. LEXIS 70332, at 9 (rejecting similar CFAA claim) (Ex. G); *International Ass'n of Machinists*

24 │  *& Aerospace Workers v. Werner*, 390 F. Supp. 2d 479 (D. Md. 2005) (dismissing claim under CFAA

25 │  where defendant had authorization to access computer at issue); *see also In re Verizon Internet*

26 │  *Servs.*, Inc., 257 F. Supp. 2d at 267; *Elektra Entm't Group, Inc.*, 2004 U.S. Dist. LEXIS 23560, at

27 │  *13 (holding Defendant has "minimal 'expectation of privacy in downloading and distributing

28 │  copyrighted songs without permission'").

8

#7378 v3

1    In short, Defendant's own actions effectively provided a blanket authorization for others to

2  access the contents of his shared folder. As a result, no claim under CFAA §1030(a)(5)(B) or (C) for

3  *unauthorized* access to Defendant's computer is available to him and the counterclaim, if allegedly

4  arising under those sections, must fail.

5    Furthermore, Defendant's factually deplete and conclusory allegations lack the requisite level

6  of specificity necessary to put Plaintiffs on notice of Defendant's claims. *Pareto*, 139 F.3d at 699

7  ("conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to

8  state a claim"). Defendant alleges that Plaintiffs employed MediaSentry to "break into his personal

9  computer to spy and steal and remove private information," and that it "gained access secretly and

10  illegally." (Counterclaim, ¶ 53). Defendant further alleges that Plaintiffs used Defendant's

11  computer "to appropriate Defendant's personal information for their own purposes." (Counterclaim,

12  ¶ 54).

13    However, Defendant fails to allege any facts in support of these general and conclusory

14  allegations. Specifically, Defendant fails to allege: 1) when or how Plaintiffs allegedly broke into

15  his computer; 2) when or how Plaintiffs allegedly spied on his private information; 3) what private

16  information was spied upon; 4) when or how Plaintiffs removed private information; 5) what private

17  information was removed; 6) what files were inspected, copied or removed; 7) when or how any

18  files were inspected, copied or removed; 8) how Plaintiffs "appropriated" defendant's "personal

19  property," *etc.* (Counterclaim, ¶¶ 53 and 54). Such basic facts are necessary to put Plaintiffs on

20  notice of the nature and basis of Defendant's claims.

21    Although Defendant's Counterclaim does not make any specific factual allegations,

22  Defendant's allegations are presumably based upon the facts alleged in Plaintiffs' Complaint,

23  namely, that, on February 8, 2007, Plaintiffs' investigators detected an individual using the

24  LimeWire file sharing service on the Gnutella P2P network to engage in copyright infringement. No

25  matter how Defendant wishes to characterize this conduct, the simple fact is that it is not actionable

26  under the CFAA because, as discussed above, Defendant broadcast the contents of his "shared"

27  folder by connecting it to a P2P network. *See Tschirhart*, U.S. Dist. LEXIS 70332, at 6 (Ex. G);

28  *see, e.g., Columbia Pictures, Inc. v. Bunnell*, 2007 U.S. Dist. LEXIS 63620, *7 (C.D. Cal. 2007)

#7378 v3

1  (observing that users of P2P file sharing systems have little to no expectation of privacy because
2  they broadcast their identifying information to everyone in the "swarm" as they download the file,
3  and because they openly disclose their IP addresses as part of the file transfer process); *In re*
4  *Verizon Internet Servs.*, 257 F. Supp. 2d at 267 ("[I]t is hard to understand just what privacy
5  expectation [a peer-to-peer user] has after essentially opening the computer to the world.").

6    Lastly, as previously discussed, Defendant has not and cannot allege that Plaintiffs damaged
7  his computer in any way, let alone that Plaintiffs intentionally damaged his computer.  Under the
8  CFAA, damage is defined as "any impairment to the integrity or availability of data, a program, a
9  system, or information, that . . . causes loss aggregating at least $5,000 in value during any one year
10  period to one or more individuals." 18 U.S.C. § 1030(e)(8)(A); *Miles v. America Online, Inc.*, 202
11  F.R.D. 297 (M.D. Fla. 2001).  There is not a single factual allegation in Defendant's counterclaim to
12  support this element other than Defendant's conclusory and legally insufficient statements that
13  Plaintiffs harmed his "property," and that Plaintiffs "interfer[ed] with the integrity and capacity of
14  Defendant's personal computer." (Counterclaim, ¶ 55).  Such conclusory allegations are insufficient
15  to state a claim.  *See Pareto*, 139 F.3d at 699.

16    For all the reasons stated above, Defendant's claim should be dismissed.

17  **VI.**  **DEFENDANT'S INVASION OF PRIVACY CLAIM (COUNT 4) SHOULD BE
18  DISMISSED BECAUSE DEFENDANT HAS NOT ADEQUATELY PLED THE
    ESSENTIAL ELEMENTS OF SUCH A CLAIM, AND BECAUSE THE ACTIONS OF
    WHICH DEFENDANT COMPLAINS ARE PRIVILEGED.**

19    Defendant's Counterclaim fails to allege any recognized theory of invasion of privacy.
20  California recognizes several forms of invasion of privacy, including: (1) intrusion into private
21  affairs; (2) public disclosure of private facts; (3) false light; and (4) appropriation of name and
22  likeness.  *See Shulman v. Group W Prods.*, 18 Cal. 4th 200, 232 (1998); *Fairfield v. American
23  Photocopy Equipment Co.*, 138 Cal. App. 2d 82, 86 (1955).  The claimant in an invasion of privacy
24  case must have conducted himself or herself in a manner consistent with an actual expectation of
25  privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the
26  invasive actions of defendant.  *Hill v. Nat'l Collegiate Ath. Ass'n*, 7 Cal. 4th 1, 26 (1994).  If
27  voluntary consent is present, a defendant's conduct will rarely be deemed "highly offensive to a
28  reasonable person" so as to justify tort liability.  *Id; see also Aisenson v. American Broadcasting Co.*

10

#7378 v3

1  220 Cal. App. 3d 146, 162 (1990) ("One factor relevant to whether an intrusion is 'highly offensive

2  to a reasonable person' is the extent to which the person whose privacy is at issue voluntarily entered

3  into the public sphere."); *Melvin v. Reid*, 112 Cal. App. 285, 290 (1931) ("There can be no privacy

4  in that which is already public.").

5        Defendant fails to articulate the invasion of privacy theory upon which he is relying to

6  support his claim. Rather, Defendant merely alleges that Plaintiffs "obtained Defendant's private

7  information relating to his account with his [ISP] through the use of unlawful and improper *ex parte*

8  communications with this Court and by misleading this Court." (Counterclaim, ¶ 57). For the

9  reasons discussed below, this allegation does not state a claim for invasion of privacy. Because there

10  are absolutely no allegations to the effect that Plaintiffs misappropriated Defendant's name or

11  likeness, Plaintiffs address only the theories of intrusion upon seclusion, false light, and publication

12  of private facts here. Notably, those courts to have considered invasion of privacy claims similar to

13  Defendant's in this same context have dismissed them. *See, e.g., Duty*, 2006 U.S. Dist. LEXIS

14  20214 at * 11-12 (dismissing defendant's intrusion upon seclusion counterclaim because defendant

15  could not show that plaintiffs intruded upon her private affairs) (Ex. F); *Tschirhart*, U.S. Dist.

16  LEXIS 70332, at 6 (dismissing invasion of privacy counterclaim because defendant had no

17  reasonable expectation of privacy) (Ex. G).

18  **A.    The Conduct of Which Defendant Complains Is Protected Under Both the**
      ***Noerr-Pennington Doctrine* and California's Litigation Privilege.**

19

20       Defendant's claim for invasion of privacy fails because the conduct of which Defendant

21  complains is protected under the *Noerr-Pennington* doctrine and California's litigation privilege.

22  The First Amendment guarantees "the right of the people . . . to petition the Government for redress

23  of grievances." U.S. CONST. amend. I. The Supreme Court has declared the right to petition to be

24  "among the most precious rights of the liberties safeguarded by the Bill of Rights." *United Mine

25  Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). This right to petition – often referred

26  to as *Noerr-Pennington* immunity – has been construed to afford a party the right to access the

27  courts. *See California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508 (1972). Consistent with

28  this right, numerous courts have shielded litigants from claims relating to the filing of litigation.

    *See, e.g., Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092-1093 (9th Cir. 2000);

11

#7378 v3

1     *Chemicor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-129 (3d. Cir. 1999); *Video Int'l Prod., Inc.*

2     *v. Warner-Amex Cable Comm.*, 858 F.2d 1075, 1082-83 (5th Cir. 1988); *Havoco Am., Ltd. v.*

3     *Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983); *Duty*, 2006 U.S. Dist. LEXIS 20214, * 12 (Ex. A).

4        The filing of a lawsuit is not the only conduct protected by the *Noerr-Pennington* doctrine.

5     Settlement discussions, including offers of settlement, constitute "conduct incidental to the

6     prosecution of the suit" that is protected under *Noerr-Pennington. Columbia Pictures Indus.*, Inc.,

7     944 F.2d at 1528; *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006) (holding that

8     settlement communications prior to litigation are protected activity, and that such protection extends

9     to legal representations made during the course of such settlement communications). Even the mere

10    threat of a lawsuit is protected by the *Noerr-Pennington* doctrine. *Coastal States Marketing, Inc. v.*

11    *Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983).

12        Likewise, California has its own litigation privilege, as codified in *Civil Code* section 47(b).

13    This statute provides:

14        A privileged publication or broadcast is one made:

15        (b)     In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other
       official proceeding authorized by law, or (4) in the initiation or course of any other
16        proceeding authorized by law

17    Cal. Civ. Code §47(b).

18        The principal purpose of the privilege for communications made in judicial proceedings is to

19    afford litigants and witnesses the utmost freedom of access to the courts without fear of being

20    harassed subsequently by derivative tort actions. *California Physicians' Service*, 9 Cal. App. 4th at

21    1325-1326. California's litigation privilege immunizes defendants from tort liability based on

22    theories of invasion of privacy and intentional infliction of emotional distress ("IIED"), amongst

23    others. *Id.* The only exception to application of *Civil Code* section 47(b) to tort suits is for

24    malicious prosecution. *Id.*

25        Here, as demonstrated on the face of Defendant's Counterclaim, the alleged actions and

26    communications on which Defendant relies to support his invasion of privacy claim were all incident

27    to the litigation undertaken by Plaintiffs. All rhetoric aside, the alleged conduct that Defendant

28    complains of in his counterclaim is conduct that has allegedly occurred either during the course of

#7378 v3

1  judicial proceedings or as a necessary precursor to Plaintiffs' efforts to legitimately enforce their

2  copyrights in the underlying action. *See Heslep*, slip op. at 11-12 (Exhibit ___ ).

3  Specifically, Defendant alleges that Plaintiffs "obtained Defendant's private information

4  relating to Defendant's account with his internet service provide through the use of unlawful and

5  improper *ex parte* communications with this Court and by misleading this Court." (Counterclaim, ¶

6  57). As previously discussed, Plaintiffs obtained Defendant's IP address just as any member of the

7  public using the LimeWire P2P file sharing service could. *See, e.g., Columbia Pictures*, 2007 U.S.

8  Dist. LEXIS 63620, *7 (users of P2P file sharing systems openly disclose their IP addresses as part

9  of the file transfer process). Plaintiffs subsequently filed a "Doe" lawsuit, naming the user of this

10  particular IP address as Doe #9. *See*, Complaint, *Sony BMG Music Ent.*, Case No. 07-CV-00581

11  BJM (S.D. Cal. 2007). Plaintiffs obtained an order to take immediate discovery in this action for the

12  limited purpose of learning the identity of the person to whom this IP address was assigned. In

13  response to a Rule 45 subpoena, SBC identified Defendant as that person, thus resulting in this suit.

14  Defendant attempts to compensate for his inability to state claim by characterizing this

15  conduct as "unlawful" and "improper," and accuses Plaintiffs of "misleading" the Court.

16  (Counterclaim, ¶ 57). These claims are entirely baseless, as evidenced by the pleadings and papers

17  on file with this Court, both in the previously-filed Doe action and this action. This conduct of

18  which Defendant complains in support of his claim falls squarely within the *Noerr-Pennington*

19  doctrine and California's litigation privilege. Indeed, the very purpose of the litigation privilege is to

20  afford litigants the utmost freedom of access to the courts without fear of being harassed

21  subsequently by derivative tort actions. *See California Physicians' Service*, 9 Cal. App. 4th at 1325-

22  1326.

23  As demonstrated by the above, Defendant has not, and cannot, state an actionable claim for

24  invasion of privacy through intrusion into private affairs.

25  **B. Defendant Has Not Stated A Claim For Invasion Of Privacy Through Intrusion Into Private Affairs.**

26  

27  To prove an "intrusion into private affairs" invasion of privacy claim, Defendant must show

28  that the Plaintiffs penetrated some zone of physical or sensory privacy surrounding, or obtained

unwanted access to data about, Defendant. *Schulman v. Group W. Productions*, 18 Cal. 4th 200, 232

#7378 v3

1    (1998). In order to sustain this cause of action, Defendant must have had an objectively reasonable

2    expectation of seclusion or solitude in the place, conversation or data source. *Id.*

3         Here, Defendant does not even allege with any specificity the supposed "private" information

4    that Plaintiffs obtained, let alone that he had any reasonable expectation of privacy in said

5    information. Nor does Defendant allege when or how Plaintiffs intruded upon his supposedly

6    private affairs.

7         Nonetheless, assuming again that Defendant's allegations relate to Plaintiffs' detection of

8    copyright infringement, even if such allegations were properly pled, they fail as a matter of law

9    because no user of a P2P file-sharing service such as LimeWire can have a reasonable expectation of

10   privacy for computer files distributed over the Internet. *See Columbia Pictures*, 2007 U.S. Dist.

11   LEXIS 63620, *7 (observing that users of P2P file sharing systems have little to no expectation of

12   privacy because they broadcast their identifying information to everyone in the "swarm" as they

13   download the file); *In re Verizon Internet Servs.*, 257 F. Supp. 2d at 267 ("[I]t is hard to understand

14   just what privacy expectation [a peer-to-peer user] has after essentially opening the computer to the

15   world."); *Tschirhart*, 05-CV-372-OLG, slip op. at 6 ("A user of a P2P file-sharing network has little

16   or no expectation of privacy in the files he or she offers to others for downloading.") (Ex. G). Here,

17   Defendant's shared folder was open for the world to see, and Plaintiffs cannot have committed any

18   invasion of privacy in viewing and downloading sound recordings from that folder.

19        Lastly, Defendant admits in his Counterclaim that the computer at issue was his own

20   "personal computer." (Counterclaim, ¶53) However, Defendant denies responsibility for the

21   copyright infringement at issue. (Counterclaim, ¶¶16, 18). To the extent that Defendant is denying

22   responsibility or ownership of the sound recordings or the "shared" folder on his computer, he has

23   no standing to assert an invasion privacy claim, as Defendant has no actionable interest in the

24   privacy of another. *See Tschirhart*, U.S. Dist. LEXIS 70332, at 6 (defendant claiming that audio

25   files being shared in computer's shared folder did not belong to her lacked standing to assert

26   invasion of privacy claim) (Ex. G).

27

28

14

#7378 v3

1    **C.    Defendant Has Not Adequately Pled A False Light Claim.**

2         In California, a "false light" cause of action is in substance equivalent to a libel claim, and

3    should meet the same requirements of a libel claim. *Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d

4    146, 160 (1990). In order to establish this claim, Defendant must establish: 1) that Plaintiffs

5    publicized information or material that showed Defendant in a false light; 2) that the false light

6    created by the publication would be highly offensive to a reasonable person; and, 3) that Plaintiffs

7    knew the publication would create a false impression about Defendant, or acted with reckless

8    disregard for the truth, or were negligent in determining the truth of the information or whether a

9    false impression would be created by its publication. *Cal. Civ. Jury Inst.* ("*CACI*"), No. 1802.

10   In determining the "offensiveness" of an invasion of a privacy interest, courts consider, among other

11   things, the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion

12   as well as the intruder's motives and objectives, the setting into which he intrudes, and the

13   expectations of those whose privacy is invaded. *Hill v. Nat'l Collegiate Ath. Ass'n*, 7 Cal. 4th 1, 26

14   (1994).

15        Here, Defendant's claim is silent as to the publication allegedly made by Plaintiffs that

16   placed him in a false light. Defendant does not explain the manner by which he claims Plaintiffs

17   made such a publication, nor does he allege to whom or where the publication was made. Indeed,

18   Defendant fails to allege any of the elements necessary to state a false light claim.

19        To the extent that the purported underpinning for Defendant's claim is Plaintiffs' filing of the

20   Complaint, that act – the petitioning of courts for redress of a grievance – is protected by both the

21   First Amendment and California's litigation privilege and cannot form the basis for a claim of false

22   light invasion of privacy. *See* Section VI. A. 1., *supra*; *Columbia Pictures Indus.*, 944 F.2d at 1529;

23   *California Physicians' Service*, 9 Cal. App. 4th at 1325-1326; *Smith v. Maldonado*, 72 Cal. App. 4th

24   631, 645 (1999) (cause of action for defamation required publication that is *unprivileged*).

25   **D.    Defendant Has Not Stated A Claim For Invasion Of Privacy Through Public
         Disclosure Of Private Facts.**

26

27        The elements of a cause of action for invasion of privacy through public disclosure of private

28   facts are: 1) public disclosure; 2) of a private fact; 3) which would be offensive and objectionable to

#7378 v3

1  the reasonable person; 4) which is not of legitimate public concern. *M.G. v. Time Warner*, 89 Cal.

2  App. 4th 623, 631 (2001).

3      Here, Defendant's claim fails because he has not, and indeed cannot, show that Plaintiffs had

4  any private information or made any private information known to the public. Additionally, as noted

5  above, Defendant cannot, as a matter of law, have any reasonable expectation of privacy in the files

6  that he distributed over the Internet through the LimeWire file-sharing service. *See Tschirhart*, 05-

7  CV-372-OLG, slip op. at 6 (Ex. G); *see, e.g., Columbia Pictures, Inc.*, 2007 U.S. Dist. LEXIS

8  63620, *7 (observing that users of P2P file sharing systems have little to no expectation of privacy

9  because they broadcast their identifying information to everyone in the "swarm" as they download

10  the file, and because they openly disclose their IP addresses as part of the file transfer process); *In re*

11  *Verizon Internet Servs.*, 257 F. Supp. 2d at 267 ("[I]t is hard to understand just what privacy

12  expectation [a peer-to-peer user] has after essentially opening the computer to the world.").

13      The fact is that the only possible "public disclosure" of which Defendant could complain is

14  the Plaintiffs' Complaint either in this case or in the Doe action, which, as demonstrated above, is

15  protected conduct that cannot give rise to any claim for invasion of privacy under the *Noerr-*

16  *Pennington* doctrine and California's litigation privilege. *See Columbia Pictures Indus., Inc.*, 944

17  F.2d at 1528; *California Physicians' Service*, 9 Cal. App. 4th at 1325-1326.

18      In sum, Defendant has failed to state a claim for invasion of privacy under any recognized

19  theory. As a matter of law, Defendant could not have any reasonable expectation of privacy in the

20  contents of his "shared" folder, and the only possible "publications" on which Defendant could base

21  a claim are the documents filed by Plaintiffs with this Court in connection with their copyright

22  infringement claim, which are thus privileged and immune from tort liability. For all of the

23  foregoing reasons, Defendant's invasion of privacy counterclaim should be dismissed.

24  **VII.    DEFENDANT'S CLAIM FOR IIED (COUNT 5) SHOULD BE DISMISSED
          BECAUSE (1) DEFENDANT HAS FAILED TO STATE THE NECESSARY**

25  **ELEMENTS OF HIS CLAIM, AND (2) THE CLAIM IS BARRED BY THE *NOERR-
          PENNINGTON* DOCTRINE AND CALIFORNIA'S LITIGATION PRIVILEGE.**

26

27      To state a claim for IIED, Defendant must allege: 1) extreme and outrageous conduct by

Plaintiffs with the intention of causing, or reckless disregard of the probability of causing, emotional

28  distress; 2) Defendant's suffering severe or extreme emotional distress; and 3) actual and proximate

#7378 v3

1 | causation of the emotional distress by the defendant's outrageous conduct. *Cervantez v. J. C. Penney*

2 | *Co.*, 24 Cal. 3d 579, 593 (1979). For conduct to be outrageous it must be so extreme as to exceed all

3 | bounds of that usually tolerated in a civilized community. *Id.*; *compare*, *Melorich Builders v.*

4 | *Superior Court*, 160 Cal. App. 3d 931, 936 (1984) (outrageous conduct is conduct that is "regarded

5 | as atrocious and utterly intolerable in a civilized community"); *with Argwal v. Johnson*, 25 Cal. 3d

6 | 932, 946 (1979) (liability for IIED does not extend to mere insults, indignities, threats, annoyances,

7 | petty oppressions, or other trivialities). Further, in order to prevail on his claim, Defendant must also

8 | establish that Plaintiffs' conduct was unprivileged. *Id.* Lastly, whether a defendant's conduct can

9 | reasonably be found to be outrageous is a question of law that must initially be determined by the

10 | court. *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989).

11 | When determining whether conduct is sufficiently "outrageous" to support a claim for IIED,

12 | courts will consider such factors as whether the defendant has a position or a relationship with the

13 | plaintiff that would cause his or her conduct to have a particularly severe impact, whether the

14 | conduct is aimed at a plaintiff known to be unusually susceptible to emotional distress, and whether

15 | the conduct was intended to inflict emotional distress. *See Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d

16 | 493, 498 n.2 (1970); *Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982); *Bundren v.*

17 | *Superior Court* 145 Cal. App. 3d 784, 791 n.8 (1983). Further, a claim for IIED requires intentional,

18 | or at least reckless, conduct, and thus a defendant's conduct must be directed primarily at the

19 | plaintiff. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

20 | Here, Defendant does not allege any specific facts establishing "extreme and outrageous"

21 | conduct that could serve as a basis for an IIED claim, nor are there any additional factors, such as the

22 | relationship of the parties, that would tend to support a finding of "outrageous" conduct. Defendant

23 | merely incorporates his previous allegations and does not specify what Plaintiffs allegedly did that

24 | qualifies as actionable "outrageous" conduct. Once again, the only conceivable conduct upon which

25 | Defendant's claims can be based are those actions taken by Plaintiffs to prosecute their copyright

26 | infringement claims, including but not limited to the filing of the "doe" suit and the filing of this

27 | action. This conduct cannot serve as a basis for an IIED claim because it is not "outrageous"

28 | conduct. *See Heslep*, slip op. at 11-12 (Exhibit A).

17

1    Plaintiffs' actions in detecting Defendant's copyright infringement were not "outrageous"

2   because Plaintiffs' investigators merely used the same P2P network used by Defendant in order to

3   view and obtain that which Defendant was broadcasting to the entire universe of P2P users. *See*

4   *Columbia Pictures*, 2007 U.S. Dist. LEXIS 63620, *7 (users of P2P file sharing systems broadcast

5   their identifying information to everyone in the "swarm" as they download the file).  Moreover,

6   Defendant's allegations do not support a finding of any special relationship, or special knowledge

7   that Defendant was particularly susceptible to emotional distress, that might tend to support a finding

8   of "outrageous" conduct.  Indeed, at the time Plaintiffs obtained the evidence of Defendant's

9   infringement the only information they had with which to identify him was an IP address, and it was

10   not until after filing the "Doe" suit that Plaintiffs learned his identity.

11    The only other conduct of which Defendant can complain is Plaintiffs' subsequent action of

12   filing the Doe suit and/or the Complaint in this Action.  Plaintiffs submit that such conduct is not

13   "outrageous" as a matter of law.  However, this Court need not even entertain that issue, as

14   Plaintiffs' initiation of judicial proceedings to enforce their copyrights is protected and immune from

15   suit under the *Noerr-Pennington* doctrine and the California litigation privilege. *See Columbia*

16   *Pictures Indus., Inc.*, 944 F.2d at 1528; *California Physicians' Service*, 9 Cal. App. 4th at 1325-

17   1326.

18    Accordingly, Defendant's IIED claim should be dismissed.

19   **VIII.   CONCLUSION**

20    For the above reasons, Plaintiffs ask the Court to grant their Motion to Dismiss Defendant's

21   Counterclaims in their entirety.

22

23   Dated: November 8, 2007                JONATHAN G. FETTERLY
                                            HOLME ROBERTS & OWEN LLP
24

25                                          By    s/Jonathan G. Fetterly
                                                  Jonathan G. Fetterly
26                                                Attorney for Plaintiffs
                                                  E-mail: jon.fetterly@hro.com
27

28

18

PROOF OF SERVICE
1013 A(3) CCP REVISED 5/1/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 777 South Figueroa Street, Suite 2800, Los Angeles, CA 90017-5826.

On **November 8, 2007**, I served the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** on the interested party in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

☐ BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ BY PERSONAL SERVICE: I caused the above-mentioned document to be personally served to the offices of the addressee.

☐ BY FACSIMILE: I communicated such document via facsimile to the addressee as indicated on the attached service list.

☐ BY FEDERAL EXPRESS: I caused said document to be sent via Federal Express to the addressee as indicated on the attached service list.

☒ BY ELECTRONIC MAIL: I communicated such document **via CM / ECF** electronic mail to the addressee on the attached service list.

Executed on **November 8, 2007**, at Los Angeles, California.

**X** (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
BARBARA E. PETERS

PROOF OF SERVICE

#5743 v1

1

## SERVICE LIST

2

**VIA CM / ECF**

Attorney for Defendant CHARLES SERRANO

3

Michael B. Stone, Esq.
4401 North Atlantic Avenue

4

Suite 200

5

Long Beach, CA 90807

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

#5743 v1